**In the Matter of Bruce W. HAUPT, a Member of the Bar of the District of Columbia Court of Appeals.**

**No. M–72('81).**

District of Columbia Court of Appeals.

March 31, 1982.

Bruce W. Haupt, pro se.

Joseph L. Mayer, Executive Atty., Washington, D. C., filed the Report and Recommendation of the Board on Professional Responsibility.

Before NEWMAN, Chief Judge, and KELLY, KERN, NEBEKER, MACK, FERREN, PRYOR and BELSON, Associate Judges.

PER CURIAM:

This matter is before the court on the Report and Recommendation of the Board on Professional Responsibility. The Board found, after consideration of the report of a hearing committee involving 13 separate matters, that respondent, Bruce W. Haupt, has demonstrated a pattern of neglect and willful disregard of ethical and legal duties in violation of DR [Disciplinary Rule] 6–101(a)(3), DR 7–101(A)(1), DR 7–101(A)(2), DR 5–101(A), DR 2–106(A), DR 7–106(C)(6), DR 2–110(A)(2), DR 9–102(B)(4), DR 1–

101(A)(4), and DR 1–102(A)(5). The Board recommends that respondent be disbarred and that restitution be made to each of the complainants demonstrating financial injury which was caused by his misconduct. The Board also recommends that the disbarment run consecutively with respondent's current three-year period of suspension, which was imposed by this court on October 17, 1980. *In re Haupt*, D.C.App., 422 A.2d 768 (1980).*

D.C.App. R. XI, § 7(3), provides in pertinent part:

> [T]he Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted.

We conclude that the findings of fact made by the Board are supported by substantial evidence of record. We also conclude that the recommendation of disbarment should be adopted. We reject, however, the Board's recommendation that the disbarment run consecutively to the present three-year suspension. We are obliged to follow Rule XI, § 19(3), of the Rules of the Court Governing the Bar of the District of Columbia, which provides that "orders imposing disbarment . . . shall be effective 30 days after entry." We also conclude, considering the totality of the circumstances, that the question of ordering restitution is better left to a separate civil proceeding, rather than resolving it in a disbarment case such as this. Accordingly, it is

ORDERED that Bruce W. Haupt be, and he hereby is, disbarred effective 30 days from the date of this opinion.

BOARD ON PROFESSIONAL
RESPONSIBILITY
DISTRICT OF COLUMBIA
COURT OF APPEALS

| | |
|---|---|
| 152-79 | 265-79 |
| 160-79 | 270-79 |
| 165-79 | 271-79 |
| 226-78 | 288-79 |

* Attached hereto as an Appendix is the Report of the Board.

227-79    289-79
234-79    329-79
264-79    366-79
377-79

In the Matter of:

Bruce W. Haupt, Esquire
RESPONDENT

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent was charged with a pattern of neglect and willful disregard of ethical and legal duties to numerous clients in violation of D.R. 6–101(A)(3), D.R. 7–101(A)(1) and D.R. 7–101(A)(2) and other disciplinary rules, and with repeatedly failing to respond to requests of Bar Counsel for information in violation of D.R. 1–102(A)(5). Hearing Committee Number Three conducted four hearings on March 20, April 12, April 30, and May 7, 1980. Twelve counts based on complaints of individual clients and one count stemming from respondent's conviction for criminal contempt in United States District Court were heard. The Hearing Committee, considering only the evidence presented at the four hearings, found that the evidence presented was sufficient and convincing beyond a reasonable doubt by itself to support a recommendation that respondent be disbarred from the practice of law. The Hearing Committee found no mitigating circumstances, and did not consider the prior discipline of the Respondent. The Respondent has received prior discipline in the District of Columbia of a suspension for 30 days based on reciprocal discipline, an informal admonition, and a suspension for three years based on similar conduct as charged in these thirteen counts.[1]

The Respondent did not appeal the Hearing Committee's findings. The Board on Professional Responsibility reviewed the Hearing Committee's findings and the record in this consolidated case.

1. *Matter of Haupt*, 422 A.2d 768 (D.C.App. 1980).

2. No evidence on Counts VIII and XIII was presented to the Hearing Committee; the evidence concerning Count XV was determined to

The Board recommends that Respondent be disbarred, and that the Court order Respondent to make restitution to each of the complainants who has demonstrated financial injury caused by the Respondent. Moreover, the Board further recommends that the disbarment sanction not run concurrently with the present three year suspension, but that the sanctions run consecutively.

### A. *The Evidence*[2]

*Count I.* On December 4 and 5, 1978, Mrs. Henrietta Supko paid respondent $525 to file an amendment, custody and support action. She later paid respondent $110 for costs. Respondent filed the action and obtained summonses, but the summonses were not served.

On October 22, 1979, and November 5, 1979, approximately eleven months later, Bar Counsel sent written communications to respondent directing him to provide information in writing concerning the Supko case. Respondent failed to supply information pursuant to those requests.

Almost fourteen months after being retained by Mrs. Supko, respondent obtained execution of service in February, 1980, after being telephoned on the matter by Deputy Bar Counsel.

Several weeks later, respondent failed to appear at the hearing attended by the parties. He called, indicated that he had car trouble, and that he would be late. Respondent failed to arrive and has provided no explanation for his absence. The Master, without request by respondent, continued the case. As of the date of the hearings by the Hearing Committee, however, respondent had made no effort to reschedule Mrs. Supko's case.

Respondent was admitted to practice law in Maryland and in the District of Columbia, but not in Virginia, where the Supko family has long resided. Respondent filed

be cumulative by the Hearing Committee. The Board has, accordingly, not relied on the charges contained in Counts VIII, XIII and XV in forming its recommendation.

the Supko action in Maryland. There is a substantial legal question whether Maryland could have provided the desired order for relief.

Mrs. Supko encountered great difficulty in contacting respondent throughout the seventeen month history of her case. During this period respondent even moved his office without informing Mrs. Supko.

*Count II.* On December 14, 1979, Judge Harold H. Greene of the United States District Court for the District of Columbia found respondent guilty of four counts of criminal contempt arising from respondent's failure to appear on behalf of a client in Bankruptcy Court in July and August, 1979. Respondent failed without good cause to provide specific answers to a questionnaire issued by the Bankruptcy Judge and failed to repay a $450 fee as ordered.

On January 7 and 24, 1980, Bar Counsel sent written communications to respondent directing him to furnish information in writing on this matter. Respondent has failed to submit information in response to those communications.

*Count III.* On August 6, 1979, Mr. and Mrs. Milton Gaines retained respondent to secure permanent resident status for Mrs. Gaines, an alien. The Gaineses later paid respondent $500. Mrs. Gaines filled out necessary Immigration and Naturalization Service forms on September 4, 1979, but did not execute them because respondent indicated he wished to review them. After several weeks, Mrs. Gaines began telephoning respondent's office several times each day. If the phone was answered, she was told that respondent would call back, but he failed to call.

On November 1 and 15, 1979, Bar Counsel sent written communications to respondent directing him to provide information about the matter. Respondent failed to provide information in response to those requests.

On November 2, respondent answered Mrs. Gaines' call and made an appointment for November 5 or 7, at 3 p. m. Respondent instructed Mrs. Gaines to inform Bar Counsel that her complaint had been resolved.

Respondent failed to keep the appointment because of an emergency court matter in Maryland. The Gaineses left a note terminating respondent's employment and requesting a return of their fee. Respondent testified that "unfortunately they were a bit late that day." When the Gaineses testified that, in fact they were 10 minutes early, respondent testified that his office had mixed up the time for the appointment. Respondent has not contacted the Gaineses during the over six months that passed after the appointment to this Committee's last hearing. He has taken no action on behalf of Mrs. Gaines. He has not returned any portion of the $500 fee.

*Count IV.* On October 16, 1978, Mr. Walter Howie retained respondent to represent him in a child support matter and bring a divorce action. Respondent was paid fees totalling $425. Respondent failed to appear at the first two dates for court consideration of the support case. Respondent filed the divorce action in June, 1979, but took no steps to serve the defendant. The divorce action was dismissed for failure to join issue within six (6) months. Respondent has not moved to reinstate the action or to commence another one, nor has he returned the $225 divorce action fee. Mr. Howie visited respondent's office, sent respondent a letter, and repeatedly phoned respondent, but received no response.

By undated letter and by letter dated 7 January 1980, Bar Counsel directed respondent to provide information in writing on the matter. Respondent failed to provide information in response to those reports.

*Count V.* On February 28, 1979, Ms. Leona Shaw retained respondent to bring a support action. She ultimately paid respondent $310 as a fee. She told respondent that prompt action was important because the father, an Air Force employee, might arrange an assignment to another geographic area. Ms. Shaw had to borrow money at 31% to pay respondent's fee. After several weeks, during which Ms. Shaw repeatedly attempted to contact respondent, respondent met with her to sign the pleadings, but not to discuss the case. Ms.

Shaw sought to discuss the case with respondent but she could not reach him and left repeated messages with his office.

A hearing was finally scheduled for June 4, 1979. Respondent failed to meet with Ms. Shaw, as agreed, prior to the hearing to discuss the case. Respondent was two hours late to the hearing, claiming car trouble. The defendant failed to appear and the case was continued. The hearing was rescheduled for July 30, but Ms. Shaw was not informed of it by respondent. At the hearing, respondent was told he could move at a later date to reopen the case or to return Ms. Shaw's money. The respondent testified that he gave his staff instructions on this hearing "to do certain things and it's apparent to me that they didn't do them." Ms. Shaw learned of the existence of this hearing only because the defendant himself informed her afterwards.

Ms. Shaw made numerous and lengthy attempts to reach respondent including over fifty phone calls and a letter to communicate her desire to continue the case. Late in 1979, she retained other counsel. She personally visited respondent and asked that her case file be sent to her new lawyer.

On December 4, 1979, and January 7, 1980, Bar Counsel sent written communications to respondent directing him to furnish information on the matter. Respondent failed to respond to those communications.

On December 7, 1979, Deputy Bar Counsel wrote respondent to relay a request that Bar Counsel assist Ms. Shaw in securing return of her documents.

On January 14, 1980, Bar Counsel informed respondent by letter that Ms. Shaw's new attorney had been unable, after numerous attempts to reach respondent, to arrange for the return of the documents. Respondent then returned the documents except for the original signed paternity acknowledgment. Respondent testified that he did not retain the original document. Ms. Shaw testified she left the document with respondent. The document was necessary for scheduling the hearing. Respondent testified that his office staff failed to inform him of Ms. Shaw's phone calls. Respondent also testified that the employees who failed to give him messages no longer worked for him after the fall of 1979.

*Count VI.* On August 8, 1979, Mr. Jessie W. Thompkins retained respondent to file a divorce. He ultimately paid a $250 fee. Mr. Thompkins made numerous and persistent attempts to contact respondent, but was only successful in mid-October, 1979, when he pretended to be a new client.

After he received his fee, respondent delayed filing for almost four months until February 11, 1980. Respondent sent service to Mrs. Thompkins by certified mail but did not receive a return receipt. He has taken no further action to service Mrs. Thompkins. He has not returned the fee to Mr. Thompkins.

On December 12, 1979, and January 7, 1980, Bar Counsel sent letters to respondent directing him to provide information about the matter. Respondent failed to provide information in response to those requests.

*Count VII.* In March or April, 1979, Mrs. Sarah N. Robinson retained respondent to bring a divorce action. There was no written retainer agreement. She understood the full fee to be $225. Respondent asserted that it was $275 plus a $5.00 filing fee. She acknowledges that respondent told her she owed an additional $80, but she did not understand to what service that was owed. Although he had a signed complaint in his possession respondent testified that he did not file until fees were paid, and that he was under no obligation to file if $5.00 of the total payment was unpaid. Mrs. Robinson attempted several times to reach respondent but was unable to reach him.

Respondent in April, 1979, negotiated a $1,500 settlement of a personal injury suit contemplated by Mrs. Robinson. The evidence offered at the hearing tended to show that Mrs. Robinson received $500, that respondent deducted a fee of $457, and, by inference, that $424 was withheld by respondent for a $350 doctor's fee and a bill of $74 from Howard University Hospital. The precise disposition of these funds, other than Mrs. Robinson's $500, is not clear. At

the hearing respondent refused to testify concerning the withholding of money from Mrs. Robinson's settlement on grounds that it might tend to incriminate him.

In a letter dated January 9, 1980, left in respondent's mail chute, Bar Counsel asked respondent to explain whether payments to Dr. Gordon and Howard University Hospital had been made. Respondent failed to provide information in response to those requests.

On January 9 and 22, 1980, Bar Counsel sent written communications to respondent directing him to furnish information on the matter. Respondent failed to provide information in response to those requests.

*Count IX.* In April, 1979, Mrs. Doris Arnold retained respondent to bring a divorce action against her husband a resident of Georgia.

Mrs. Arnold wrote a check with payee's name blank for $300 for respondent's fee and gave it to Marie Collins, respondent's secretary. The name was left blank because the secretary offered to put it in by stamp. The name "Marie Collins" was written in as payee on the cancelled check. Respondent testified he did not authorize his secretary to make the check payable to her order. Respondent testified that he had never paid over a check to his secretary.

Mrs. Arnold later gave respondent's secretary $150 in cash as the cost of service by publication. Respondent did not make service of any kind. Implicitly, he has not returned any money to Mrs. Arnold. Mrs. Arnold phoned respondent repeatedly but reached him only once.

On January 11 and 24, 1980, Bar Counsel sent written communications to respondent directing him to provide information in writing on the matter. Respondent failed to provide information pursuant to those requests.

*Count X.* On or about March 29, 1979, Mr. Michael A. Butler, a Virginia resident, retained respondent to file a divorce action against his wife, a New York resident. He paid a $450 fee and later $185 for costs. Over four months later, Mr. Butler called and asked why no action had been taken. Respondent stated he was waiting for $185 for costs. When Mr. Butler protested, respondent stated he found the check in his desk but that Mr. Butler should provide a new one because the first check was old.

Respondent informed Mr. Butler that he was not admitted in Virginia and that he intended to associate with another lawyer in filing the action. No action was ever filed. Mr. Butler made repeated attempts to contact respondent without success. He retained new counsel. Respondent has not returned any portion of the fee or costs.

On January 11 and 22, 1980, Bar Counsel sent written communications to respondent directing him to provide information in writing concerning the matter. Respondent failed to provide information pursuant to those requests.

*Count XI.* In 1978, Mr. Eugene Morse consulted respondent about a claim by the Veterans Administration against him for alleged overpayment of $2,551 of educational benefits. Respondent was representing Mr. Morse in a personal injury matter when the Veterans Administration issue arose. Respondent told Mr. Morse he would represent him without additional charge because it was a simple matter. Respondent failed to comply with United States Attorney procedures for negotiating a settlement with the result that the United States filed suit. Mr. Morse was not informed of the progress of negotiation. Respondent testified that he did not undertake an active representation but only advised Morse to delay in the hope that the file would be lost.

In September and October, 1978, Mr. Morse paid respondent $320–330 in checks and cash to enforce the child support rights of his stepchildren. Respondent obtained an order for support and a bench warrant in the District of Columbia on the natural father because respondent was temporarily suspended from the practice of law in Maryland. After the suspension was lifted, respondent made no effort to enforce the support obligation. Respondent testified he was under no obligation to take action because Mr. Morse "did not produce any addi-

tional funds." There is no evidence of any agreement that additional funds were required.

Mr. Morse asked respondent to return his money and his file. Respondent refused to return the fee and promised to mail the file, but did not.

*Count XII.* In October, 1978, Mrs. Alvanetta Green consulted respondent about a divorce. Respondent charged her $25 for the consultation and a $510 fee, which she paid. Mrs. Green verified the Bill of Complaint for Divorce on March 6, 1979, and respondent filed it on April 25, 1979. Respondent obtained subpoenas for service on Mr. Green on April 26, 1979, October 18, 1979 and February 7, 1980. None of them were served on the defendant. In March, 1979, Ms. Green furnished respondent with her husband's address and that address is shown on the pleading filed in the case except that the pleading shows the city as "Charlestown, West Virginia" while correct usage is "Charles Town, West Virginia." The subpoena issued on April 26, 1979, however, bears the incorrect city (Charleston) but the other subpoenas bear the same address as the pleadings. After respondent told Mrs. Green he had the incorrect address she had her husband call respondent to provide the correct address. Respondent offered no evidence of attempts to serve Mr. Green by mail, publication or otherwise. Although the record is not explicit as to whether respondent returned any of the money paid by Mrs. Green, it is implicit from the evidence that none of it has been returned.

*Count XIV.* Mrs. Brenda Johnson retained respondent late in 1979 to bring a divorce action. Mrs. Johnson verified the complaint on February 13, 1980. Respondent has failed to file the divorce action for Mrs. Johnson. Respondent testified that "(i)t was overlooked, apparently, because it would have been filed when all the others were filed." Mrs. Johnson tried repeatedly without success to contact respondent. Implicitly, respondent has not returned any money to Mrs. Johnson.

Mrs. Johnson paid respondent $300 by check and money order as a fee, plus $5 in cash for costs. The payments were handed personally to respondent. A check dated October 15, 1979, has the typed name "Marie Collins" as payee. Mrs. Johnson testified that she left the name of the payee blank at respondent's direction when she gave him the check because he stated he was going to give it to her as part of her pay. Respondent denied that he told her he was going to give it to his secretary. Respondent did not deny that the check was given to him.

B. *Hearing Committee's Findings of Fact and Conclusions of Law*

The Hearing Committee wanted to make clear its findings on intentional conduct, and we incorporate its discussion herein:

In all cases upon which this Committee heard testimony, particularly regarding Counts I–VII, IX, X and XIV, respondent consistently was almost impossible to reach, did not return phone calls and failed to answer letters. During the events that gave rise to this proceeding he even moved his office without informing his clients of the move. The lack of communication is so persistent, prolonged, and pervasive that this Committee can only conclude that it was intentional. At the hearing, respondent sought to place fault for the lack of communication on his employee, Marie Collins, who left respondent's employ in the fall of 1979. However, the pattern continued consistently after Marie Collins left. Respondent is clearly responsible for lack of communication after Marie Collins left his employ. A reasonable inference from the evidence is that respondent was responsible for it and aware of it before Ms. Collins left, as well.

The Committee feels that it should make clear its findings on intentional misconduct. In Count I, respondent failed for more than fourteen months after verification of the complaint before his law clerk executed an affidavit of service. The Committee finds from this pattern of neglect that respondent's acts were not only neglectful but intentional.

Respondent claims that he failed to appear at the Supko annulment hearing on March 7, 1980, because of car trouble. He called and indicated that he would be late but in court by 12:45 p. m. Respondent nevertheless failed to appear. B.E. I–5, p.3 T.R. A–34. The Committee notes that the hearing was held almost fifteen months after Mrs. Supko verified the bill of complaint, after respondent was contacted by Bar Counsel on Mrs. Supko's behalf. The Committee does not accept respondent's explanation for his absence. Respondent could have found alternative transportation to the hearing. The Committee finds respondent's behavior to be intentional. He called, indicated he would appear, knew the parties were waiting, but failed to appear or to call the parties to tell them he would not appear.

Similarly, respondent had over eight months from September 7, 1979, when Mrs. Gaines sent completed Immigration and Naturalization Service application forms to him until the May 7, 1980, hearing before this Committee to review and execute the forms, but has offered no evidence that he has done so. Throughout this period Mrs. Gaines called respondent repeatedly, often several times each day, but could not reach him. Respondent's only attempt to meet with the Gaineses occurred immediately after Mrs. Gaines complained to Bar Counsel. Respondent instructed Mrs. Gaines to inform the Office of Bar Counsel that her complaint had been resolved, but he then failed to meet the Gaineses even though their testimony, which the Committee credits, indicates they were early for the appointment. Respondent's excuse, that he had to go to Maryland on an emergency court matter, is not credited by the Committee. Were this an isolated incident in an otherwise conscientious record of client service by respondent, the Committee would consider the incident in a different light. Placed as it is, in the midst of a pattern of neglect and implicit evasion, the Committee can only find that respondent's failure to meet with the Gaineses was intentional.

The Committee applies similar reasoning to find intent in patterns of neglect by respondent in other courts. In Count IV, respondent failed to work and to communicate with Mr. Howie over the period from June 13, 1979, when Mr. Howie signed the complaint for divorce, until this Committee's final hearing on May 7, 1980. Mr. Howie's divorce action was dismissed for failure to join issue within six months. In Count V, respondent failed to tell Ms. Shaw of the date of her support hearing on July 30, 1979, and failed to reopen the case after dismissal, in spite of being later told by the judge that he could reopen if he desired. Because of this notice by the judge, respondent's intent to fail to seek the lawful objectives of his client through reasonably available means, and to fail to carry out a contract of employment, is clear to the Committee.

The Committee finds each of the following patterns of neglect to be intentional. In Count VII, respondent failed to file Mrs. Robinson's divorce, after receiving $225 which the client understood to be his fee, nor did he otherwise pursue his client's cause. He further failed to communicate with his client about the divorce action for approximately a ten month period from June 28, 1979, when Mrs. Robinson signed the complaint, to this Committee's hearing on May 7, 1980. In Count IX, respondent failed to make service on the defendant or to communicate with Mrs. Arnold for approximately six months from September, 1979, when Mrs. Arnold paid $15 cash for service by publication to this Committee's hearing on May 7, 1980. In Count X, respondent failed to file Mr. Butler's divorce or to communicate with Mr. Butler for approximately eight months from late August, 1979, to this Committee's May 7, 1980, hearing.

In Count XI, respondent was advised by letter from the United States Attorney's Office, dated over five months before suit was filed, that a written offer of compromise was necessary for negotiation or the United States would sue Mr. Morse. In spite of that clear threat, respondent neither complied nor relayed the existence of the threat to Mr. Morse with the result that his client was sued without any knowledge

of the events that immediately led to the suit. Respondent testified that he did not undertake any active representation but only advised Morse to delay in the hope that the file would be lost. The Committee does not credit this testimony. It finds intentional conduct by respondent to ignore legal and contractual duties when respondent had knowledge that the file was not lost through the United States Attorney's correspondence. With respect to the child support order that respondent secured for Mr. Morse, the Committee finds intent to ignore legal and contractual duties when respondent failed to enforce the order or to communicate after termination of his suspension in Maryland.

In Count XII, the Committee feels that respondent failed to take reasonable steps for approximately twelve months to serve the defendant for Mrs. Green. Aside from the mistakes that he made in the defendant's address, after he had full knowledge of the correct address in Charles Town from the defendant himself, respondent failed to serve the defendant and failed to communicate with Mrs. Green. The Committee feels that this pattern of neglect is evidence of intent to ignore legal and contractual duties.

In Count XIV, respondent engaged in a pattern of neglect from February 13, 1980, when Mrs. Johnson verified the complaint, to the Committee hearing on May 7, 1980, when he failed to file the divorce action and failed to communicate with her. The Committee feels this pattern of neglect amounts to intent to ignore legal and contractual duties to his client, Mrs. Johnson.

The Hearing Committee found violations of D.R. 7–101(A)(1) and (A)(2) for each of the following circumstances:

—A more than twelve month delay in service and obtaining affidavit of service and filing, continued failure to communicate with Mrs. Supko, and lack of evidence of reasonable steps taken to shorten the delays, in spite of ample opportunity to be aware of the circumstances;

—Failure to appear at the March 7, 1980, hearing for Mrs. Supko, held almost fifteen months after her complaint was verified, lack of reasonable effort to appear after experiencing "car trouble," in spite of ample opportunity to make other arrangements, and failure to take immediate steps to obtain a new hearing date;

—Failure to take action on behalf of Mrs. Gaines, in spite of ample opportunity over at least eight months after necessary Immigration and Naturalization Service forms were completed;

—Failure to go forward with Mr. Howie's divorce action and failure to communicate, in spite of ample opportunity to do so since June 13, 1979, when the complaint was signed;

—Failure to reopen Mr. Shaw's case after full notice by the Court at the July 30, 1979, dismissal;

—Failure to file Mrs. Robinson's divorce action and failure to communicate with Mrs. Robinson, in spite of ample opportunity over approximately ten (10) months after the complaint was signed to do so;

—Continued failure to make service on the defendant for Mrs. Arnold, and continued failure to communicate with Mrs. Arnold, in spite of ample opportunity over approximately six months to do so;

—Failure to arrange for the filing of a divorce action for Mr. Butler, in spite of ample opportunity over a period of approximately eight months after receiving a new check for $180 for costs;

—Failure to act on behalf of Mr. Morse in the Veterans Administration matter or to notify him;

—Failure to take reasonable steps, after termination of suspension, to enforce Mr. Morse's child support order;

—Failure to take reasonable steps for approximately twelve months to serve the defendant for Mrs. Green despite the fact that the defendant himself ultimately informed respondent of his correct address in Charles Town, West Virginia;

—Continued failure to file Mrs. Johnson's divorce action, in spite of opportunity

since February 13, 1980, and failure to communicate with her.

The meaning of intent in this disciplinary rule has been discussed by the District of Columbia Court of Appeals as well as several other courts,[3] and the violations charged in this case are consistent with the prevailing interpretation.

The Hearing Committee found Respondent guilty of neglect of a legal matter entrusted to him in violation of D.R. 6–101(A)(3) for each of the following circumstances:

—A more than twelve month delay in service and obtaining affidavit of service and filing for Mrs. Supko;

—Failure to appear at the March 7, 1980, hearing for Mrs. Supko, held almost fifteen months after her complaint was verified;

—Conduct which resulted in respondent's conviction for criminal contempt in the District Court of the District of Columbia;

—Failure to take any action on behalf of Mrs. Gaines and failure to communicate with the Gaineses about the matter for which they employed him;

—Failure to make two appearances in Mr. Howie's child support case, failure to go forward with the divorce action for Mr. Howie, with the result that the

---

3. *Matter of Willcher*, 404 A.2d 185 (D.C.App. 1979): The court held that Respondent had violated Disciplinary Rule 7–101(A) as charged in four counts of a twelve count petition by his protracted failure to act on behalf of his clients or make himself accessible to them, notwithstanding a finding that there was "(a) strong likelihood that respondent was suffering from a severe form of depression at the time of the misconduct, and that his misconduct was a result of, or at least exacerbated by, his debilitated mental condition." Id. at 189.

*Matter of Haupt*, 422 A.2d 768 (D.C.App. 1980): The court held that respondent violated Disciplinary Rule 7–101(A)(1), thus finding intent, where he was "(m)ore than merely neglectful; he was fully aware of his obligation to seek a divorce for Mrs. Flythe and of his failure to do so."

*Matter of Fogel*, 422 A.2d 966 (D.C.App. 1980): The court held that respondent violated Disciplinary Rule 7–101(A) where it was found that he failed to make certain filings, failed to appear for certain court dates, and, on appeal, failed to file pleadings. Although not specifically addressed by the court, it may be inferred that the court found intent, as in Haupt (supra), from respondent's awareness of his obligations to his client and his failure to fulfill them.

*Matter of Russell*, 424 A.2d 1087 (1980): The court held that respondent violated Disciplinary Rule 7–101(A) based on a charge that he failed "to take any substantive action on behalf of his client," rejecting respondent's contention that no attorney/client relationship existed and that his involvement with the complainant had been "as a friend."

The Indiana Supreme Court stated in the *Matter of Vincent*, 374 N.E.2d 40 (1978), that "It is well established that although intent is a subjective mental function, the existence of intent may be established by resort to reasonable inference based on an examination of the surrounding circumstances." Id. at 42.

A similar result was reached in deciding a question of the meaning of "willfully" in a disciplinary proceeding by the California Supreme Court. There it was held that when applied to the intent with which an act was done or omitted, "willfully" implies a purpose or willingness to commit the act or make the omission. It does not require bad faith or the intention to injure another. *Durbin v. State Bar*, 23 Cal.3d 461, 152 Cal.Rptr. 749, 590 P.2d 876 (1979).

The recently published Annotated Code of Professional Responsibility (American Bar Foundation, 1979) contains the following discussion of "intentionally" in connection with Disciplinary Rule 7–101(A)(2) at page 297:

Although the provision literally refers to intentional failure to carry out an employment contract, courts frequently cite D.R. 7–101(A)(2) in conjunction with violations of D.R. 6–101(A)(3) which forbids a lawyer to neglect a legal matter entrusted to him or her. See, for example, *Florida Bar*, 336 So.2d 356 (Fla.1976) (the lawyer failed to file an amended complaint within the designated period); *Star [Stark] County Bar Ass'n v. Lukens*, 48 Ohio St.2d 187, 357 N.E.2d 1083 (1976) (owing to disabling illness, the lawyer lacked diligence in representing his clients); *State v. Alvey*, 215 Kan. 460, 524 P.2d 747 (1974) (the lawyer neglected legal matters); *Committee on Legal Ethics v. Daniel*, 235 S.E.2d 369 (W.Va.1977) (the lawyer failed to complete client matters).

One court has held that the lawyer's duty to be punctual in carrying out his or her professional duties, set forth in former Canon 21 and current E.C. 7–38, "would not most likely come within ... D.R. 6–101(A)(3) and D.R. 7–101(A)(2)." *In re Smith*, 83 Wash.2d 659, 521 P.2d 212, 214 n.2 (1974).

action was dismissed for failure to join issue within six months, and failure to communicate with Mr. Howie;

—Failure to be reasonably available to make timely court appearances, to notify his client of a hearing date, and to move to reopen Ms. Shaw's support action;

—An almost four month delay in filing Mr. Thomkins' complaint, failure to make himself available to communicate with Mr. Thomkins, and failure to make further efforts to obtain service;

—Failure to file the divorce action for Mrs. Robinson, failure to pay Dr. Gordon or Howard University Hospital as claimed;

—Failure to make reasonable effort to complete service on Mrs. Arnold's husband, and failure to communicate with Mrs. Arnold;

—Failure to arrange for the filing of Mr. Butler's divorce action;

—Failure to take required action for negotiation of settlement of the Veterans Administration on behalf of Mr. Morse; failure to notify Mr. Morse of communications he was receiving from the United States Attorney's Office;

—Failure to take reasonable steps, after termination of suspension to enforce Mr. Morse's child support order;

—Failure to serve the defendant for more than twelve months after filing of the complaints for Mrs. Green;

—Failure to file Mrs. Johnson's divorce action, in spite of opportunity since February 11, 1980.

Additionally, the Hearing Committee found Respondent guilty of the following additional violations of the Disciplinary Rules:

(1) In Count VII, respondent failed to pay Dr. Gordon $350 or Howard University Hospital $74, which is an intentional failure to carry out a contract of employment in violation of D.R. 7–101(A)(2).

(2) In each of Counts I–VII, IX and X, by failing to respond timely to written requests of Bar Counsel for information in each matter, Respondent committed conduct prejudicial to the administration of justice in violation of D.R. 1–102(A)(5).

(3) Respondent's choice of Maryland as the forum for the Supko action was not the result of his independent, professional judgment but was influenced by his financial or business interest which was in conflict with that of his client. As a result, he violated D.R. 5–101(A).

(4) Respondent's retention of the $450 fee in violation of the order of the Bankruptcy Court constituted the charging of a clearly excessive fee, in violation of D.R. 2–106(A).

(5) Respondent's failure to appear personally before the Bankruptcy Court as required by it, and his failure to respond properly to a questionnaire it had submitted constituted conduct prejudicial to the administration of justice, in violation of D.R. 1–102(A)(5) and discourteous conduct which is degrading to a tribunal, in violation of D.R. 7–106(C)(6).

(6) Respondent's failure to make timely delivery of documents to Ms. Shaw after her request that he do so following the termination of his representation and his failure to deliver the original of the document of acknowledgment of paternity violated Disciplinary Rule 2–110(A)(2) and D.R. 9–102(B)(4).

(7) Respondent's continuing failure to pay $350 to Dr. Gordon and $74 to Howard University Hospital as claimed, and his intentional failure to carry out a contract of employment with Mrs. Robinson, constitutes a violation of D.R. 1–101(A)(4) as conduct involving dishonesty.

## C. The Sanction

A recommendation of disbarment in this case is consistent with the following cases previously decided by the District of Columbia Court of Appeals, and with Respondent's record of prior discipline:

*In the Matter of Duesterdick*, D.C.App. No. D–9–75 (1975): Where the respondent took no action on his client's personal injury claim allowing the Statute of Limitations to

extinguish the claim, and subsequently misrepresented the status of the claim to the client and falsely stated both to his client and an inquiry committee that the claim had been settled, the Court found that such conduct warranted disbarment.

*Re: John Spencer*, Bar Docket No. 100–78: Respondent was disbarred based on a finding by the U. S. District Court that he had neglected a legal matter entrusted to him in violation of Disciplinary Rule 6–101(A)(3) and that he was guilty of conduct involving dishonesty, fraud, deceit or misrepresentation of and conduct prejudicial to the administration of justice in violation of Disciplinary Rules 1–102(A)(1), (4) and (5). The Board on Professional Responsibility was of the opinion that the Court's conclusion of law that respondent was "guilty of conduct; involving dishonesty, fraud, deceit or misrepresentation . . . necessarily implied a finding on its part that he had falsely represented to the Court or to its Committee on Grievance (or both) that he had in fact mailed pleadings. The Board decided that the Court's decision of disbarment was based upon this finding, rather than the finding that he had negligently handled a matter entrusted to him by a client. Reciprocal discipline of disbarment was imposed by the District of Columbia Court of Appeals.

*Sawyer/Kirn*, Bar Docket Nos. 117–76 and 60–77: Respondent was charged with violating Disciplinary Rules 1–102(A)(4) and (5), Disciplinary Rule 6–101(A)(3), Disciplinary Rules 7–101(A)(1) and (2) and the Board on Professional Responsibility recommended disbarment. Respondent failed to represent his clients (in two consolidated cases) by not filing suit, misrepresenting the status of the case and completely fabricating the outcome to the client. The respondent compounded his error by making no attempt to justify or excuse his actions and the Board felt that disbarment was by no means too severe a penalty. Respondent subsequently was disbarred by consent.

*Matter of Carter*, D.C.App. No. D–31–79 (1979): Where respondent was recom-

mended for discipline in three separate proceedings involving violations of Disciplinary Rule 6–101(A)(3), Disciplinary Rule 1–102(A)(5) and Disciplinary Rules 7–101(A)(2) and (3) and the Board found a consistent pattern of misconduct, the Court ordered him disbarred.

*Matter of Bush*, D.C.App. No. C–58–79/D–39–80 (1980): Where respondent had previously been suspended for one year and one day for neglect and the Board found that in the instant case, a serious criminal matter, that he had violated Disciplinary Rule 6–101(A), Disciplinary Rule 7–101(A) and Disciplinary Rule 1–102(A)(5), thus evidencing a persistent pattern of deliberate neglect of his ethical duties to his clients, the Court ordered him disbarred.

The Board further recommends that the Court order the Respondent to make restitution to the complainants who have been financially damaged.[4]

1. Mrs. Supko paid Respondent $525 for a fee and $110 for costs.

2. Mr. and Mrs. Gaines paid Respondent $500.

3. Mr. Howie paid Respondent $425.

4. Ms. Shaw paid Respondent $310.

5. Mr. Thompkins paid Respondent $250.

6. Mrs. Arnold paid Respondent's secretary and agent $450.

7. Mr. Butler paid Respondent $450 for a fee and $185 for costs.

8. Mr. Morse paid Respondent $320–$330.

9. Mrs. Green paid Respondent $510.

10. Mrs. Johnson paid Respondent $300 as a fee and $5 cash for costs.

11. Respondent failed to repay to the client he represented in a bankruptcy matter a $450 fee which the Bankruptcy Judge ordered him to repay under Local Bankruptcy Rule 5–20(b).

Further, the Board recommends that the court order Respondent to pay expenses he

---

**4.** Rules of District of Columbia Court of Appeals Governing the Bar, Rule XI, Section 3.

is obligated to pay from a $1,500 settlement he received for a personal injury suit for Mrs. Robinson. Specifically, he has not paid $350 to Dr. Gordon for a doctor's fee and $74 to Howard University Hospital.[5]

> For the Board on Professional Responsibility
> /s/ MARNA S. TUCKER,
> Member

All of the members of the Board on Professional Responsibility participated in this decision.

Date: 3/12/81

5. The Board has asked the United States Attorney's Office to investigate possible allegations of fraud resulting from Respondent's failure to pay these bills.