**In re William REBACK and Charles C. Parsons, Members of the Bar of the District of Columbia Court of Appeals.**

No. 83–1289.

District of Columbia Court of Appeals.

Argued June 26, 1984.

Decided Jan. 31, 1985.

David T. Austern, Washington, D.C., with whom Ronald A. Schechter, Washington, D.C., was on briefs, for respondents.

Jackson H. Rose, Asst. Bar Counsel, Washington, D.C., with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on brief, for Board on Professional Responsibility, petitioner (minority).

Joseph L. Mayer, Executive Atty., Washington, D.C., for Board on Professional Responsibility, petitioner (majority).

Before NEWMAN, BELSON and TERRY, Associate Judges.

PER CURIAM:

In this disciplinary matter, attorneys William Reback and Charles C. Parsons contest the Report and Recommendations of the Board on Professional Responsibility. A majority of the Board concluded that the attorneys had each violated several provisions of the Code of Professional Responsibility. The Board majority recommended that both be suspended, Reback for a year and a day and Parsons for 30 days. We reject one of the Board's findings of violation by Reback and partially disagree with the Board's recommendation as to sanction, ordering instead that both attorneys be suspended for a year and a day. In all other respects we accept the Board's findings and adopt its recommendations.

Rosemary Lewis retained the firm of Reback and Parsons to pursue her divorce

claim. While Reback was the only attorney to whom Lewis ever spoke, Parsons took responsibility for the case. He filed a verified complaint in the Superior Court.

Some months later, the court issued a warning notice pursuant to Super.Ct.Dom. Rel.R. 41(f), which provides that a case that is not at issue within six months after its filing date shall be dismissed after notice to the attorneys. Owing apparently to a defect in the firm's case-handling procedures, neither Reback nor Parsons saw the notice. The case was dismissed without their knowledge.

Shortly after the dismissal, Lewis' brother telephoned Reback to inquire about the progress of the case. Reback and Parsons then discovered that the case had been dismissed. They did not tell Lewis or her brother. Instead, they prepared a second complaint, identical in substance to the first.

The second complaint purported to be verified by Lewis. Instead of obtaining Lewis' signature, however, Reback signed Lewis' name to the complaint in the presence of Parsons. One of the two lawyers— or a secretary acting at their direction— then had the complaint notarized. Whoever took the complaint to the notary necessarily represented that the signature was genuine. Parsons filed the complaint, knowing that the signature was false.

The partners then assigned the case to an associate. They told the associate to come to them if he had questions. Other than giving him that instruction, they did not supervise him. He had trouble obtaining the required proofs of publication of notice to Lewis' husband. After another warning from the court, the second complaint was dismissed for failure to put it at

issue within six months. Two weeks later the attorneys had the complaint reinstated.

Five months after the reinstatement, Lewis discovered that the first complaint had been dismissed and a second one filed over her falsified signature. She asked Reback and Parsons to withdraw as her counsel, which they did. They returned to her all the fees she had paid them.

The Hearing Committee held a hearing at which Reback and Parsons testified. They cooperated fully with the Hearing Committee and expressed remorse for their actions. The Hearing Committee found that they had violated D.R. 6–101(A)(3) (neglect of a legal matter) and D.R. 1–102(A)(5) (conduct prejudicial to the administration of justice). The Committee found no violation of D.R. 7–101(A)(1) (intentional failure to seek client's lawful objectives), D.R. 7–102(A)(5) knowing false statement of law or fact), or D.R. 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation).[1] In recommending a sanction, the Hearing Committee put great weight on the factors mitigating the offenses, especially the fact that the attorneys had shown remorse and the fact that Reback in his 30 years of practice and Parsons in his 15 had never before faced disciplinary charges. The Hearing Committee recommended that the Board reprimand the lawyers.

The Bar Counsel recommended that the Board adopt the Hearing Committee's findings and its conclusions on violations of the code. He recommended, however, that the Board increase the sanction to public censure.

A majority of the Board saw the case differently. Five of the nine Board members concluded that both Reback and Par-

---

**1.** The cited disciplinary rules read in relevant part as follows.

 D.R. 6–101(A): A lawyer shall not:
 (3) Neglect a legal matter entrusted to him.
 D.R. 1–102(A): A lawyer shall not:
 (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
 (5) Engage in conduct that is prejudicial to the administration of justice.

 D.R. 7–101(A): A lawyer shall not intentionally:
 (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules.
 D.R. 7–102(A): In his representation of a client, a lawyer shall not:
 (5) Knowingly make a false statement of law or fact.

sons had violated D.R.'s 1–102(A)(4) and (5) (conduct involving dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice), 6–101(A)(3) (neglect of a legal matter), and 7–102(A)(5) (knowing false statement of law or fact), and that Reback alone had violated D.R. 7–101(A)(1) (intentional failure to seek client's lawful objectives).[2] The Board majority recommended that this court suspend Reback for a year and a day and Parsons for 30 days.

The four-member minority of the Board concluded that both Reback and Parsons had violated only D.R.'s 1–102(A)(5), 6–101(A)(3), and 7–102(A)(5). The minority saw the record as showing an unusually large number of mitigating factors. The dissenting members therefore recommended that both attorneys receive public censure.

We affirm the Board's findings of violations other than its finding that Reback was guilty of intentional failure to seek his client's lawful objectives, and conclude that both attorneys should be suspended for a year and a day. Our discussion will develop first the basis for our holdings concerning code violations and second the considerations that bear upon the proper sanction.

## I. Code violations

### A. D.R. 6–101(A)(3): Neglect of a legal matter entrusted to the lawyer.

The Hearing Committee, the Bar Counsel, and both the majority and minority of the Board agreed that Reback and Parsons had violated D.R. 6–101(A)(3) by neglecting the divorce suit that Lewis had entrusted to them. This consensus is clearly correct. An ABA Informal Opinion states:

> Neglect involves indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the

responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission. Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith.

ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1273 (1973). Among other things, Reback and Parsons failed over an extended period of time to put the first complaint at issue and failed to ensure that their associate put the second one at issue. Thus they committed more than "a single act or omission."

Reback and Parsons argue that the Board improperly held them accountable for their associate's ethical breaches. The majority did not impute the associate's violations to the partners, however. Rather it viewed the associate's mistakes as evidence of the partner's failure to supervise him; that failure to supervise, combined with the partners' other lapses, constituted neglect under D.R. 6–101(A)(3). *See In re Alexander*, 466 A.2d 447 (D.C.1983) (attorney violated D.R. 6–101(A)(3) by delegating responsibility for a case to an inexperienced associate and then failing to prepare the associate for the representation; attorney's failure to rectify associate's errors, failure to appear for court hearings, and failure to return client's telephone calls also supported the Board's finding of the violation), *cert. denied,* —— U.S. ——, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984).

### B. D.R. 1–102(A)(5): Conduct prejudicial to the administration of justice.

We also have no doubt that when Reback and Parsons signed the false signature and Parsons filed the complaint, they engaged in conduct prejudicial to the ad-

---

**2.** The Board report gives some indication that the Board found a violation of D.R. 1–102(A)(3) (illegal conduct involving moral turpitude). The report mentions this disciplinary rule only in passing, however, never discussing it. The Board majority's brief before this court does not mention the provision. No party alluded to the section in any brief or at oral argument. We conclude that the Board majority did not intend the reference to D.R. 1–102(A)(3) in its report to constitute a finding of a violation of that section.

ministration of justice, thereby violating D.R. 1–102(A)(5). The attorneys argue that the second complaint presented facts and arguments identical to those in the first complaint, so there was no risk that the court would reach an incorrect decision. This argument is untenable. As we said in *In re Keiler*, 380 A.2d 119, 125 (D.C.1977) (per curiam), "the prohibition against 'conduct prejudicial to the administration of justice' bars not only those activities which may cause a tribunal to reach an incorrect decision, but also conduct which taints the decision making process." The filing of a complaint that falsely purports to have been signed by the plaintiff surely taints the decision making process with deception.

C. *D.R. 7–102(A)(5): Knowing making of false statement of law or fact; D.R. 1–102(A)(4): Conduct involving dishonesty, fraud, deceit, or misrepresentation.*

 The Board determined that the attorneys had violated D.R. 7–102(A)(5) and D.R. 1–102(A)(4) by signing and filing the second complaint. The Hearing Committee, however, employing a clear and convincing evidence standard, *In re Smith*, 403 A.2d 296, 302 (D.C.1979), had decided that the record did not support a ruling that the attorneys had violated those rules. When the Board considers alleged violations that the Hearing Committee declined to find, it must employ a clear and convincing evidence standard; by contrast, when the Board reviews findings of violations that the Hearing Committee made, it employs a substantial evidence test. *Id.* Upon judicial review "[i]n considering the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C.Bar.R. XI, § 7(3). In examining the Board's rulings that the attorneys violated D.R. 7–102(A)(5) and D.R. 1–102(A)(4), then, this court must look to whether there is substantial evidence of

record to support the findings the Board made upon its application of the clear and convincing evidence test.[3]

 Like their answer to the charge that their conduct was prejudicial to the administration of justice, the attorneys' answer to the D.R. 7–102(A)(5) charge is that the second complaint did not present false facts to the court. Lewis had verified the identical facts when she signed the first complaint. Again, this argument is unavailing. The very submission of the second complaint was a false representation that Lewis had signed that complaint and authorized its filing. As there is no dispute that the attorneys did sign and file the second complaint, the evidence supporting a holding of violation of D.R. 7–102(A)(5) is certainly clear and convincing.

 Reback and Parsons make two arguments in urging us to reject the Board majority's finding of violation of D.R. 1–102(A)(4). The first is the already rejected argument that the facts stated in the second complaint were true. Second, the attorneys—and the Board minority—contend that the majority improperly based its holding on allegations in the initial petitions charging Reback and Parsons with misleading Lewis about the matter of how soon her case would be set for trial. The Board concluded that such assurances to Lewis were misrepresentations. The attorneys argue that no stipulations or other evidence establishes they made such a statement falsely. We need not decide whether this argument is correct, because the Board majority's alternative ground for finding a violation of D.R. 1–102(A)(4) is adequate to support the Board's ruling. The Board concluded that the attorneys' failure to tell Lewis that her first complaint had been dismissed and a second one filed constituted deceit and misrepresentation. "Concealment or suppression of a material fact is as fraudulent as a positive direct misrepresen-

---

**3.** Our standard of review is the same whether a finding of violation was made first by a Hearing Committee or by the Board, since, ultimately, the record must contain evidence sufficient to support a finding of violation by clear and convincing evidence.

tation." *Andolsun v. Berlitz Schools of Languages of America, Inc.*, 196 A.2d 926, 927 (D.C.1964). Certainly the status of Lewis' case was a material fact. Because this is beyond cavil and because the attorneys stipulated that for two years they did not tell Lewis this material fact, we hold that the Board's conclusion that Reback and Parsons violated D.R. 1–102(A)(4) is supported by clear and convincing evidence.

In sum, we quote, with full approval, the Report of the Board on this point:

In order to continue the litigation, and at the same time prevent their client from learning the true facts, Respondent had to commit two unlawful and possibly criminal acts. First, Respondent Reback, in the presence of his partner Parsons, signed his client's name to what purported to be his client's own written oath. Secondly, a notary public had to be induced presumably by false representations as to the genuineness of Mrs. Lewis' purported signature, to verify it.[4]

### D. *D.R. 7–101(A)(1): Intentional failure to seek lawful objectives of client through reasonably available means.*

We reverse the Board's finding, applicable only to Reback, of violation of D.R. 7–101(A)(1). The Hearing Committee explicitly found that "[i]t is clear from the evidence that Respondents were not aware of the neglect." We can affirm the Board's contrary finding only if it is supported by substantial evidence. It was not.

The Board held that Reback's failure to supervise the associate in charge of the second complaint showed an intentional failure to pursue Lewis' objectives. The Board explained:

Respondents have admitted that they took no responsibility for supervising their associate ... when he was helplessly *floundering* with the *second* case. They made no effort to further the law-

ful objectives of their client through means reasonably available to them, such as checking up on [the associate] to see to it that prompt and proper service by publication was had, that the suit would not be dismissed again for failure to put it in issue, and that the bills for the publication notices were paid. During this period Respondent Reback was being "continually" reminded by telephone calls from his client and "every three or four weeks" by telephone calls from her brother of their concerns in the matter. There was no chance that Reback could "forget" the second case as he had the first one. The conclusion is inescapable that Respondent Reback *intentionally* failed to assume his minimal supervising responsibilities as Mrs. Lewis' lawyer.

[Emphasis in original.]

Our opinions show that attorneys will be held not only to have been neglectful but also to have intentionally failed to seek the client's lawful objectives if the attorneys were demonstrably aware of their neglect or if their neglect was so pervasive that they must have been aware of it. For example, *In re Haupt*, 422 A.2d 768, 770 (D.C.1980) (*Haupt I*) (per curiam), shows that an attorney's awareness of his neglect is important to a finding that he violated D.R. 7–101(A)(1). There we affirmed the violation because the Hearing Committee had found "that respondent was more than merely neglectful; he was fully aware of his obligation to seek a divorce for [his client] and of his failure to do so." 422 A.2d at 770. *In re Haupt*, 444 A.2d 317 (D.C.1982) (*Haupt II* ), reaffirms the importance of lawyers' awareness of their neglect. *See id.* at 325 n. 3 (discussion of awareness factor in *Haupt I* and in *In re Fogel*, 422 A.2d 966 (D.C.1980) (per curiam).

In our view, the record does not support a finding, by clear and convincing evidence, that Reback's actions were characterized

---

4. We note that by filing the forged document with the Superior Court, Respondents commit- ted yet a third unlawful and possibly criminal act, uttering.

by the pervasive neglect present in many previous cases on D.R. 7–101(A)(1). The attorney in *Haupt II, supra*, was charged with ten counts of neglect of ten clients. The Board adopted, and we affirmed, the Hearing Committee's conclusion that this neglect was "so persistent, prolonged, and pervasive that this Committee can only conclude that it was intentional." 444 A.2d at 322. *See also, e.g., In re Willcher*, 404 A.2d 185 (D.C.1979) (twelve disciplinary counts, seven of which were for neglect and four of which showed violations of D.R. 7–101(A) as well as neglect. While Reback's neglect was certainly serious, it involved only one client and one case, and cannot be deemed so pervasive that it showed that he must have intended to neglect that case.

Awareness of neglect and pervasiveness of neglect are of course not the only evidence from which one can infer that attorneys intentionally failed to advance their clients' interests. For example, evidence that a lawyer fabricated excuses for his neglect may also support a finding that his neglect was conscious and intentional. *See, e.g., In re Fogel, supra*, 422 A.2d at 967. Here there is no evidence that Reback falsely excused his failure to supervise the associate.

The Board concluded that, because Lewis' brother telephoned Reback every few weeks, Reback could not have forgotten about the case and so must have ignored it intentionally. The frequent reminders make Reback's negligence more egregious, but, even when combined with the other relevant evidence, they cannot be found to have provided clear and convincing evidence of intent. We conclude that the Board's holding that Reback violated D.R. 7–101(A)(1) is not supported by clear and convincing evidence.

## II. *Sanction*

Having concluded that Reback and Parsons violated D.R.'s 6–101(A)(3), 1–102(A)(5), 7–102(A)(5), and 1–102(A)(4), and that Reback did not violate D.R. 7–101(A)(1), we must now consider what sanction is appropriate.

Under D.R. Bar R. XI § 7(3), this court, in reviewing the Board's decision on sanction, "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." We hold that Reback, whom the Board recommended be suspended for a year and a day, and Parsons, whom the Board recommended be suspended for 30 days, should receive equal sanctions of suspension for a year and a day.

The Board concluded that Reback deserved a greater sanction than Parsons for three stated reasons: Reback violated D.R. 7–101(A)(1), while Parsons did not; Reback spoke with Lewis many times, while Parsons never spoke to her, so the deception and neglect were more Reback's responsibility than Parsons'; and Reback was directly responsible for the signature falsification and false oath, while Parsons had only ancillary responsibility.

We do not share the Board's views on this point. We reject the first reason, of course, because we hold that Reback was not shown to have violated D.R. 7–101(A)(1). Thus the two attorneys committed identical substantive violations. We also cannot agree that Reback was ultimately more responsible for the neglect and for the failure to tell Lewis of the status of her case. While it is true that Lewis spoke only to Reback and probably regarded him as her lawyer, Parsons was entrusted with pressing the first complaint and was obliged to see to it that the client was aware of the case's progress. Moreover, there is no basis for distinguishing between Reback's and Parsons' failures to supervise the associate to whom the lawyers delegated responsibility for the second complaint. Finally, we think that Reback and Parsons were equally responsible for the false signature and false oath to the notary. While Reback actually signed Lewis' name, it was done in Parsons' pres-

ence, and he then filed the complaint with the court, knowing that the signature was false. The evidence did not show who took the second complaint to be notarized, so we cannot know who assured the notary that the signature was genuine.

We hold that to impose different sanctions on the two attorneys would be to authorize "inconsistent dispositions for comparable conduct" in violation of D.C. Bar R. XI § 7(3). The question, then, is what identical sanction the two should receive.

We are presented with a case where Respondents seriously neglected a client's legal matter; repeatedly misled her as to the status thereof; and, to conceal their defalcations from her, forged her name to a verified complaint; falsely represented to a notary public that the signature was genuine; and filed the falsified pleading with the Superior Court.

The elements of the criminal offense of forgery, as applicable here, are as follows:

1. That the writing in some part was falsely made by the defendant;

2. That the defendant falsely made the writing with specific intent to defraud and without authority from the complaining witness, and

3. That the falsely made writing was apparently capable of effecting a fraud.

The elements of the criminal offense of uttering, as applicable here, are as follows:

1. That the writing in question was in some part falsely made;

2. That the defendant filed the writing with the Superior Court representing it to be true and genuine;

3. That he did so knowing that the signature of his client thereon was falsely made;

4. That the defendant acted with specific intent to defraud and without authority from the complaining witness; and

5. That the falsely made writing was capable of effecting a fraud.

If respondents were prosecuted for the crimes of forgery and uttering on the undisputed facts of this case, the only real justiciable controversy would be over the issue of specific intent to defraud, for the other elements are basically undisputed or undisputable. We have no doubt that if a jury were to convict, this court would sustain the conviction because a reasonable juror, acting reasonably, could find guilt as to both forgery and uttering.

What the appropriate discipline under these circumstances—where there has been no prosecution and, as far as we can tell, none is likely; but where the evidence would sustain a conviction of forgery and uttering with specific intent to defraud a client whose case they had previously neglected, if such a conviction were obtained—is a question of first impression with this court. We have looked to such cases as *In re Sheehy*, 454 A.2d 1360 (D.C. 1983); *In re Haupt*, 422 A.2d 768 (D.C. 1980), and *In re Smith*, 403 A.2d 296 (D.C. 1979), as did the Board majority. We find none of those cases particularly helpful, for none of them involved conduct constituting likely criminality. We have examined a number of our other cases without finding meaningful help. However, there is one case which provides some degree of insight—*In re Ferrell*, U.S.D.Ct., D.C.Misc. No. 28–68. Ferrell was convicted of forgery and uttering because he forged a safety responsibility release and then uttered it by filing it with the Department of Motor Vehicles. By order of the United States District Court for the District of Columbia dated July 26, 1968, he was "suspended from practice as a member of the bar of this court pending the final determination of any appellate proceedings on his behalf in Criminal No. 283–67." When his convictions were affirmed, no further order was entered, apparently through inadvertence. In November 1975, Ferrell petitioned this court seeking reinstatement. By order of this court dated November 30, 1976, he was reinstated. Thus, his period of suspension was seven years and four months, a

period in excess of the five year lapse before a disbarred lawyer who is eligible for reinstatement may apply for it. On the other hand, we agree with the Board that there are mitigating circumstances. Neither Respondent has a prior disciplinary record. Both cooperated with Bar Counsel, appeared contrite, and returned to Mrs. Lewis the fee she had paid. Considering the severity of the conduct, the mitigating circumstances, and being mindful of the provisions of D.C.Bar R. XI § 7(3) which directs that we accept the Board's recommendation as to sanction unless such would foster inconsistent dispositions for comparable conduct or otherwise would be unwarranted, we conclude that any sanction less than a suspension for a year and a day would be clearly inadequate and thus unwarranted. Therefore, Respondents shall each be suspended from the practice of law for one year and a day. This order of suspension shall be effective 30 days from the date of this opinion. D.C. Bar R. XI § 19(3).

*So ordered.*

TERRY, Associate Judge, concurring:

I join fully in the court's opinion. I write these few words to dispel a shadow cast by the dissent.

Our dissenting colleague suggests that in deciding what sanction to impose, we should take into account whether the interests of respondents' client were prejudiced. In my judgment that is not really an issue. The evidence shows that respondents engaged in patently dishonest conduct which was calculated to deceive the court and which was grossly prejudicial to the administration of justice. Such conduct undermines public confidence in the legal profession and in the integrity of our judicial system. It is for that reason that I believe we must come down fairly hard on these two respondents (or on any other lawyers who engage in similar conduct). Whether the client's interests were prejudiced is of little or no consequence. Thus I have voted for a year-and-a-day suspension; anything less would be a mere slap on the wrist.

Because this is a case of first impression, the sanction we impose here will be the standard for future cases. I think the court must be especially firm in letting the bar know that conduct such as that which these two attorneys engaged in will not be tolerated under any circumstances. Were it not for respondents' unblemished records, I would probably vote to suspend them for an even longer period.

BELSON, Associate Judge, concurring in part and dissenting in part:

I join in the majority opinion, except with respect to sanction. I agree with the majority that the sanction for the two respondent attorneys should be equal. In my opinion, however, the sanction of suspension for a year and a day is too severe in light of the respondents' previously unblemished records.

This court is the final arbiter of Bar disciplinary sanctions. Our rules reflect our decision to accord great weight to the sanction recommendations of the Board on Professional Responsibility.[1] In a case like this where the sanction issue is novel, it is instructive to take note also of the recommendations of the other participants in the disciplinary process. In this proceeding, the Hearing Committee recommended that both respondents merely be reprimanded. The Bar Counsel took the position that they should be publicly censured. The four-member minority of the Board also recommended that both attorneys receive public censure. Turning to the Board, its five-member majority recommended that respondent Reback be suspended for a year and a day—but based that recommendation in part on a holding that we reject, that is, that Reback was guilty of a violation of D.R. 7–101(A)(1), intentional failure to seek client's lawful objectives. As to respondent Parsons, the Board recommended a

1. D.C. Bar Rule XI, § 7(3).

suspension of only 30 days. Compared with the recommendations, then, of all those called upon to express an opinion until now, the majority's imposition of a suspension of a year and a day on both respondents is severe.

I agree with the majority that we are dealing with a matter of first impression. None of our precedents in the area of bar discipline deals with an instance in which an attorney has falsely signed a pleading which was then filed with the court. This case will be a precedent by which any similar violations in the future will be measured. That circumstance counsels that we proceed not simply with severity, but upon a careful weighing of both the nature of the misconduct and the records of the attorneys involved. We have stated that the fact that an attorney has had no prior disciplinary actions is "highly relevant and material" to the determination of the sanctions. *In re Cope*, 455 A.2d 1357, 1361 (D.C.1983). It follows that we should not treat the respondents with a degree of severity which is not due them in consideration of their previously unblemished records, simply for the purpose of making an "example" of them and thereby deterring like conduct in the future by respondents or others.

After noting that the case before us is one of first impression, the majority arrives at a sanction principally by reference to the case of *In re Ferrell*, U.S.D.Ct., D.C.Misc. No. 28–68, in which the respondent was suspended indefinitely from practice by the United States District Court after being convicted of forgery and uttering in that court.[2] That precedent affords little guidance here. Since Ferrell's suspension was of indefinite duration, it is not helpful with respect to the length of any suspension to be imposed here. Moreover, Ferrell's conviction, of itself, furnished a sufficient basis for suspension or disbarment.[3] Thus, the United States District Court was not required, as we are, to give weight to the respondent's professional record in determining the proper sanction.

The majority links this case to *Ferrell* by concluding, precipitously, that if a jury should convict respondents of forgery and uttering, this court would undoubtedly sustain their convictions. D.C.Code § 22–1401 (1981). The majority acknowledges the existence of a justiciable controversy over whether respondents had the specific intent to defraud. I note that there is not only a fact issue with respect to their specific intent, but also the legal issue of whether the filing of a second complaint, identical to an original complaint authorized by the client, could be found capable of prejudicing the client's interests.

Relevant to the issue of prejudice is the fact that Reback and Parsons could have obtained the same result in their client's case by filing a motion to vacate the dismissal of the complaint for divorce and to reinstate the complaint. If granted, that motion could scarcely be said to have prejudiced their client's interest. I note this only to raise the question. The issues of criminal responsibility raised here have not been fully briefed by the parties, nor could they have been on this record. They cannot and should not be settled here. It is enough to say, as the Board did, that respondents' actions were possibly criminal.

I emphasize that in dissenting with respect to sanction, I do not mean to minimize the seriousness of respondents' mis-

---

**2.** The records of the United States District Court disclose that Ferrell was suspended by order dated July 26, 1968. The suspension was made effective pending his appeal of his criminal conviction. No subsequent order of the United States District Court altered his status. Neither the records of the United States District Court nor the records of his reinstatement proceeding in this court, M–16–75, reveal whether the fact that Ferrell was not subsequently disbarred was the result of a decision or, as the majority surmises, was inadvertent.

**3.** D.C.Code § 11–2103 (1967). This was so even though the statute then in force, unlike the present statute, § 11–2503 (1981), did not make disbarment mandatory upon conviction of an offense involving moral turpitude.

conduct.[4] The courts, the public, and the profession have the right to expect honesty of members of the Bar. Respondents' conduct with respect to the divorce complaint was intolerable. It calls for a substantial sanction.

To determine what that sanction should be in this matter of first impression, we must look to the purposes of Bar discipline. We have identified those purposes as avoiding "erosion of public confidence in the profession," "protection of the public from generally incompetent or unethical lawyers, and deterrence by example." *In re Kleindienst*, 345 A.2d 146, 147 (D.C.1975). We have similarly described the purpose of discipline as being "to protect the public, the courts and the legal profession." *In re Haupt*, 422 A.2d 768, 771 (D.C.1980); *In re Smith*, 403 A.2d 296, 303 (D.C.1979). The discipline meted out must also reflect the nature of the misconduct, and any mitigating or aggravating circumstances. *Haupt, supra* at 771.

It seems clear that the protection of the interests we have identified does not require permanent removal of respondents from practice. Thus, their temporary suspension will be for the purpose of deterring such future misconduct by respondents or others, and to assure the public that it can be confident that the profession is doing what is necessary to prevent misbehavior of the sort in question. I submit that a suspension of 6 months will serve those goals.

Let us examine first the effect of such discipline upon respondents. They have been humiliated already by their error and have been contrite and cooperative throughout the disciplinary process. Coming after 15 years and 30 years of unblemished professional performance, respectively, by attorneys Parsons and Reback, the experience of this proceeding together with a 6-month suspension would surely deter them from any similar misconduct in the future. Other members of our profession would realize from this unhappy proceeding that falsely signing a document and filing it with the court is a serious offense, and that if lawyers with such long and unsullied professional careers are suspended for 6 months for such conduct, offending lawyers who had previously been disciplined would face a sanction of correspondingly greater severity. The impact of that discipline would serve the goal of protecting the public. Interested members of the public who looked at the consequences of the discipline could be expected to recognize the adequacy of the sanction.

Respondents are the only members of a two-lawyer firm. Respondent Parsons is apparently a member of the District of Columbia Bar only. A suspension of 6 months would require him to arrange for other counsel to go forward with his existing cases and would undoubtedly cause a substantial disruption of his practice. That sanction is severe enough to accomplish the avowed purposes of discipline. The majority sanction of suspension for a year and a day will be devastating. It must be remembered that a suspension of that length requires one to reapply for permission to practice. Disciplinary Rule XI § 21(1), (5). It does not terminate of itself when its period has run. Therefore, the resultant term of suspension will be far longer than a year and a day. A suspension of that length can be expected to obliterate Mr. Parsons' practice. The same considerations apply in the case of respondent Reback, mitigated only by the fact that he

---

**4.** Respondents' serious misconduct has to do with the signing, notarizing and filing of the complaint. A first instance of neglect, of itself, normally warrants only a reprimand or censure. *In re Mailloux*, Bar Docket No. 66–79 (BPR June 14, 1981) (attorney neglect of client's lawsuit, resulting in dismissal for want of prosecution, warranted reprimand); *In re Roundtree*, Bar Docket No. 31–76 (BPR September 29, 1978) (attorney reprimanded for neglecting to file notice of claim which resulted in dismissal of subsequent suit); *In re Rosenthal*, Bar Docket No. 118–77 (BPR July 21, 1978) (attorney reprimanded for failing to file landlord/tenant action on behalf of client); *In re Mizel*, No. 18–75 (D.C. December 17, 1975) (attorney censured for neglect which resulted in dismissal of a suit for want of prosecution).

apparently is a member of the Maryland Bar also, and some delay could be expected in reciprocal discipline.

Whether the discipline imposed by this court is a 6-month suspension or a suspension of a year and a day, this case will have alerted not only respondents but our entire Bar and the public of the seriousness of the misconduct involved here. Either sanction would serve all of the recognized purposes of Bar discipline. Respondents' prior good records should lead us to impose the least onerous sanction that will serve those purposes. Because the majority's sanction is far more severe than necessary, I respectfully dissent.