In re Vincent C. UCHENDU, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 01–BG–1579.

District of Columbia Court of Appeals.

Argued Oct. 31, 2002.

Decided Dec. 19, 2002.

John O. Iweanoge, Washington, DC, for respondent.

· Julia L. Porter, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN and GLICKMAN, Associate Judges, and NEBEKER, Senior Judge.

GLICKMAN, Associate J.:

The Board on Professional Responsibility recommends that the respondent Vincent C. Uchendu be suspended from the practice of law in the District of Columbia for thirty days. The Board found that respondent violated Rules 3.3(a), 8.4(c), and 8.4(d) of the District of Columbia Rules of Professional Conduct by signing his clients' names on documents filed with the Probate Division of the District of Columbia Superior Court and by notarizing some of his own signatures on these documents. We accept the Board's findings that respondent made false statements to the court in violation of Rule 3.3(a), engaged in dishonest conduct in violation of Rule 8.4(c), and seriously interfered with the administration of justice in violation of Rule 8.4(d). In light of these findings, we accept the Board's recommendation on discipline and suspend respon-

dent from the practice of law in the District of Columbia for thirty days.

### I.

Vincent Uchendu was admitted to the District of Columbia Bar in 1991. He also was commissioned as a Notary Public in the District of Columbia in 1990, and remained a Notary Public through at least 1998. A significant part of respondent's practice was the representation of individuals serving as guardians or personal representatives in matters before the Probate Division. In their role as court-appointed fiduciaries, respondent's clients were required on occasion to file verified documents with the Probate Division. These documents included Notices of · Appointment pursuant to D.C.Code § 20–704 and Superior Court Probate Rule 403(b)(4); inventories of the decedent's property pursuant to D.C.Code § 20–711 and Probate Rule 109; and Certificates of Completion pursuant to D.C.Code § 20–735 and Probate Rule 426.

Between 1996 and 1998, respondent signed his clients' names on at least sixteen documents requiring verification and filed fifteen of these documents with the Probate Division.[1] On thirteen of the documents, respondent placed his initials next to the signature line, presumably to indicate that he had signed for his clients. For example, on a Certificate of Completion purportedly filed by his client Mildred Austin, Respondent signed "Mildred P. Austin/VCU." He also notarized four of the documents, although he had signed them himself and his clients had not affirmed the contents of the documents. The Board divided the sixteen documents into four categories. Category One en-

---

**1.** The sixteenth document, a Settlement Agreement, was not formally filed with the Probate Division, but was submitted to a dep-

uty auditor at the court by facsimile. The auditor placed the Settlement Agreement in the court's file.

compasses one document that did not have respondent's initials next to the signature and was notarized by respondent.[2] Category Two encompasses three documents that were not initialed but were not notarized.[3] Category Three encompasses three documents that were initialed and were notarized.[4] Category Four encompasses the remaining nine documents that were initialed and that were not notarized.[5]

During Bar Counsel's investigation, respondent admitted to signing his clients' names on these documents and to notarizing some of these signatures. Respondent claimed that he had his client's permission to verify documents on their behalf, and he presented affidavits of his clients asserting that he had their permission to sign for them. Respondent testified that he did not know that his conduct was improper. He testified that his practice was to include his initials on all documents he signed for his clients, and that he left his initials off four of the sixteen documents through inadvertence. He claimed that the Probate Division regularly accepted documents with his initials on the signature line and that he had signed documents for clients "right in front of" Probate Division employees.

Before the Hearing Committee, Bar Counsel called several Probate Division employees who testified that the Probate Division did not knowingly accept documents without verifications signed by the personal representative. Indeed, two court employees testified that they had rejected documents filed by respondent in 1998 and in early 2000 because of improper signatures. (Respondent filed at least one document purportedly signed by a client in 1999, after he had received one of these warnings.) The Committee credited the testimony of the Probate Division employees that they did not knowingly accept documents not verified by the fiduciary and discredited respondent's contrary testimony.

The Hearing Committee found that Bar Counsel had shown by clear and convincing evidence that respondent had violated three of the District of Columbia Rules of

2. The Category One document was a verified accounting signed for Gail Taylor, guardian of the estate of Kelvin Boyce–Gray.

3. The Category Two documents were a Waiver of Filing Inventories and Accounts signed for Zella Wesley, personal representative for the estate of Charles Wesley; a Certificate of Completion signed for Agnes Straughn, personal representative for the estate of Carol Pearson; and a Waiver of Filing Inventories and Accounts signed for Robert Boyd, personal representative for the estate of Annie Mae Woods.

4. The Category Three documents were an Inventory signed for Gail Taylor, guardian of the estate of Kelvin Boyce–Gray; an Accounting signed for Ms. Taylor; and a settlement agreement signed for Robert Boyd, personal representative for the estate of Annie Mae Woods.

5. The Category Four documents were a Verification and Certificate of Notice signed for Zella Wesley, personal representative for the estate of Charles Wesley; Verification and Certificate of Notice signed for Mamie Roberts, personal representative for the estate of Brevious Roberts; a Verification and Certificate of Notice signed for Agnes Straughn, personal representative for the estate of Carol Pearson; a Certificate of Completion signed for Mildred Austin, personal representative for the estate of James Pemberton; a Verification and Certificate of Notice signed for Edward Taylor, personal representative for the estate of Ida Belle Lea; a Verification and Certificate of Notice signed for Connie Cunningham, personal representative for the estate of Lovie Cunningham, Jr.; a Verification and Certificate of Notice signed for Aaron Crowe, personal representative for the estate of Ada Crowe; an Inventory signed for Robert Boyd, personal representative for the estate of Annie Mae Woods; and an Appraiser's Verification signed for Mr. Boyd.

Professional Conduct: Rule 3.3(a) ("A lawyer shall not knowingly [m]ake a false statement of material fact or law to a tribunal"), Rule 8.4(c) ("[e]ngag[ing] in conduct involving dishonesty, fraud, deceit, and misrepresentation"), and Rule 8.4(d) ("[e]ngag[ing] in conduct that seriously interferes with the administration of justice"). The Committee found Rule 3.3(a) and Rule 8.4(c) violations for both the documents submitted to the Probate Division that had been notarized improperly (Categories One and Three) and the documents that did not have initials signifying that respondent had signed for his clients (Categories One and Two).[6] The Committee also found that the submission of all four categories of documents seriously interfered with the administration of justice in violation of Rule 8.4(d). The Committee recommended a thirty-day suspension and six hours of continuing legal education in probate law.

The Board on Professional Responsibility accepted the Hearing Committee's findings. The Board agreed that respondent violated Rule 3.3(a) and Rule 8.4(c) by submitting the Category One, Two, and Three documents because the unacknowledged false signatures and the false notarizations were "false statement[s]" under Rule 3.3(a) and dishonest under Rule 8.4(c). Additionally, the Board found that respondent's submission of all four categories of documents seriously interfered with the administration of justice within the meaning of Rule 8.4(d). Applying the three-part test of *In re Hopkins*, 677 A.2d

55, 61 (D.C.1996), the Board first found that respondent's conduct was "improper" because it contravened the probate statute and the rules. Second, the Board found that the improper submissions bore upon the administration of justice because "court personnel might be expected to rely and act upon the documents." Finally, the Board found that the violations tainted the judicial process in more than a *de minimis* way because it "disrupted important lines of accountability between the court and its appointed fiduciaries."

The Board also adopted the Hearing Committee's recommended sanction of a thirty-day suspension. The Board found that respondent's conduct did not involve serious misrepresentations that would warrant lengthy suspension or disbarment but nonetheless was more egregious than "an isolated instance of dishonesty and/or false statements to a tribunal in a purely procedural matter." The Board took into account that respondent had his clients' authorization, had not falsified substantive information, and had not prejudiced his clients or the court's decisionmaking. The Board also noted that this was respondent's first disciplinary offense. On the other hand, the Board found several aggravating factors: respondent's persistence in making false signatures and notarizations, his regular notarizations in spite of a professed unfamiliarity with the laws governing notaries, and his less than truthful recantation before the Hearing Committee of a stipulation he had made.[7] On

---

**6.** Bar Counsel did not pursue Rule 3.3(a) or Rule 8.4(c) charges for the Category Four documents.

**7.** On May 30, 2000, respondent agreed to a joint stipulation that he "did not seek, nor did he obtain the permission or approval of Court personnel ... to sign the names of his clients on probate documents or to notarize the signature of a client that Respondent had affixed

to the document." The following day in testimony before the Hearing Committee, respondent claimed that at least four Probate Division employees knew that respondent was signing his client's names on the documents and approved of the practice. The Hearing Committee found respondent's testimony to be "evasive and not forthright," and concluded that his recantation of the stipulation was not credible.

balance the Board found that public censure "would not adequately redress the repeated and knowing violations evident on this record" and recommended imposition of a thirty-day suspension coupled with six hours of CLE courses—one course in ethics and one course in either probate administration or agency law.

## II.

■ Initially, we consider whether the probate documents signed by respondent on behalf of his clients had to be signed personally by the estate fiduciaries. After reviewing the language and the purpose of D.C.Code § 20–102(a) (2001) and the Superior Court Probate Rules, we conclude that verifications must be signed by the responsible personal representative or guardian. Moreover, the probate forms themselves make it clear that they should be signed personally by the representative or guardian on whose behalf they are submitted.

The District of Columbia's statutory scheme for probate administration depends, in part, upon the services of individuals appointed by the court as personal representatives and guardians. *See* D.C.Code § 20–303, –120(b) (2001). Personal representatives act in a fiduciary role to administer decedents' estates. *See* D.C.Code § 20–101(j) (2001). Personal representatives are also required to file certain "verified" documents with the court. *See* D.C.Code § 20–711 (inventories); § 20–735 (Certificates of Completion). Other documents, such as Verification and Certificates of Notice, are to be "certified" by the personal representative. D.C.Code § 20–704(b). Guardians have a similar fiduciary role when representing a minor with an interest in an estate. *See* D.C.Code § 21–120(b). Guardians must file annual accounts "verified by the fiduciary's oath." *See* Super. Ct. Prob. R. 204(a)(4).

D.C.Code § 20–102 provides that a "verification [of a writing] shall be sufficient if the writing is signed by the person required to make the verification." On its face, therefore, the statute requires that verifications be personally made. The probate rules also make it clear that signature by the personal representative is the norm in the Probate Division. Probate Rule 3 requires "[a]ll pleadings filed by a fiduciary in the Probate Division ... [to] be verified by the fiduciary." Probate Rule 204(a)(4) provides similarly that accounts must be "verified by the fiduciary's oath," and Rules 411(b) and 426 require Notices of Action Taken on Claims and Certificates of Completion to be "signed by the personal representative." Furthermore, the Hearing Committee and the Board found on substantial evidence that the prevailing interpretation of the Probate Division was that documents had to be signed personally by the fiduciary. Three Probate Division employees testified credibly that they understood the probate statute and rules to require the signature of the individual fiduciary. *See In re Temple,* 629 A.2d 1203, 1208–09 (D.C.1993).

In contending that § 20–102(a) permits attorneys to sign verifications as agents of their clients, respondent relies on *Easter Seal Society for Disabled Children v. Berry,* 627 A.2d 482, 488 (D.C.1993). In *Easter Seal,* we held that a complaint filed by a corporation in a probate proceeding could be verified by the corporation's attorney under § 20–102(a). *Id. Easter Seal* dealt with the limited situation in which a nonnatural person is participating in a probate proceeding. Corporations are capable of acting only through agents; *Easter Seal* simply recognized that, in the absence of statutory language to the contrary, an attorney is as capable of being an agent as anyone else. To read *Easter Seal* as creating a general right for personal repre-

sentatives to delegate their duties to their attorneys, however, would contradict both the language of § 20–102(a), which calls explicitly for signature "by the person required to make the verification," and the statutory scheme that language serves. A statutory system reliant on court-appointed fiduciaries would be undermined by an interpretation that allowed the fiduciaries to delegate their duties and have their attorneys sign their court filings for them.

Respondent also argues that his verification of documents that he prepared was permissible in light of Super. Ct. Civ. R. 9–I(c), which provides that a verification may be made by an attorney when that attorney has "personal knowledge" of the facts to be verified. This provision, however, applies to the situation in which an attorney makes a verification on his or her *own* behalf. When, on the other hand, the verification "is made on behalf of a party to an action, it shall set forth the representative capacity … and shall contain a statement that the person has authority to verify the particular pleading or make the affidavit on behalf of the person's principal." Super. Ct. Civ. R. 9–I(c). Even assuming for the sake of argument that initialing next to the signature line was sufficient to set forth respondent's representative capacity, none of the documents that respondent signed contains any statement claiming respondent's authority to sign on behalf of his clients. More fundamentally, Rule 9–I(c) does not purport to answer the substantive question of whether it is permissible in the probate context for an attorney to sign in lieu of the fiduciary.

Statute and Rules aside, the jurats of the documents that respondent signed indicate that they were to be verified by the personal representative or guardian. For example, the jurat for a Verification and Certificate of Notice by Personal Repre-

sentative reads "I do further solemnly declare and affirm that I have previously filed or file herewith proofs of publication as required by SCR–PD 403(b)(4)." The signature line underneath this jurat is marked "Personal Representative"; significantly, the form has a separate place for attorneys to sign. Similarly, the jurat of Agnes Straughn's Certificate of Completion stated "I, Agnes V. Straughn, (a)(the) personal representative of the estate of Carol Pearson, deceased, do hereby certify that I have caused to be mailed [a copy of the final account and the Certificate of Completion]." The signature line was marked "Personal Representative." In light of this language requiring verification by the personal representative, respondent's submission of documents constituted a representation to the court that his clients had personally signed the documents.

Guardians and personal representatives are key participants in the probate process who are required to apprise the court of their actions as they execute their fiduciary obligations. For the probate court to effectively supervise these fiduciaries, they must be personally accountable for their actions. Requiring guardians and personal representatives to verify personally the contents of their filings assures that these fiduciaries are executing their duties. As the Board found, "[t]he verification and notary requirements exist to ensure that important court documents are executed under oath by specific, qualified individuals who have been appointed by the court to serve in positions of trust."

### III.

■ Respondent's submission of the Category One and Category Two documents, which were signed by him without initials or other indication that his clients were not the actual signatories, violated

Rules 3.3(a) and 8.4(c). Each of these documents made the false representation that the personal representative or guardian had signed it.

Respondent contends that these false representations did not violate Rules 3.3(a) and 8.4(d) because the documents were substantively accurate and because he had no intent to defraud his clients. While that may be true, it is beside the point. A falsely signed document that is submitted to a court is a false representation because the signature is misleading, even if the substance of the document is accurate. *See In re Reback*, 487 A.2d 235, 239 (D.C. 1985), *vacated on other grounds*, 513 A.2d 226 (D.C.1986) (en banc).[8] In *Reback* the attorneys filed a complaint purportedly signed by their client, although it was actually signed by one of the attorneys. *See id.* at 237. Although the client had previously affirmed the factual allegations in an identical complaint, the court held that the submission of the falsely signed complaint violated the prohibition in Disciplinary Rule 7–102(A)(5) against knowingly making false statements of law or fact in a representation of a client. *See id.* at 239 ("The very submission of the second complaint was a false representation that [the client] had signed that complaint and authorized its filing"). Similarly, respondent's submission of documents with false signatures was a misrepresentation to the court that the documents were verified properly.

Respondent's lack of intent to defraud does not alter the falsity of his representations or the dishonesty of his conduct. *See In re Schneider*, 553 A.2d 206, 209 (D.C. 1989). Schneider submitted false expense reports to his law firm in order to recover fair compensation for expenditures that he had not documented. *See id.* at 207. Schneider did not intend to deceive his law firm about the "true and accurate total amount of his client-related expenses," but we held that he nevertheless violated Disciplinary Rule 1–102(a)(4), the precursor to our present Rule 8.4(c). *Id.* at 209. Schneider's "deliberate falsification of documents" was a dishonest act that violated the rule, "whatever the ultimate intent or motives may have been in making such alterations." *Id.* Similarly, in this case Respondent did not need to have a fraudulent intent in order to violate Rule 3.3(a) and Rule 8.4(c). Nor did the consent of respondent's clients justify or excuse his conduct. Respondent is not charged with violating his duty to his clients; he is charged with violating his duty of honesty to the court.

■ Pointing to the *scienter* requirements for criminal forgery, *see United States v. Gilbert*, 140 U.S.App. D.C. 66, 66, 433 F.2d 1172, 1172 (1970), respondent argues that a violation of Rules 3.3(a) and 8.4(c) requires an affirmative intent to deceive. This argument is unavailing, because "a lawyer's actions do *not* have to reach the level of criminal conduct before disciplinary action may be taken." *In re Minninberg*, 485 A.2d 149, 151 (D.C.1984). Because "[h]onesty is basic to the practice of law," *Reback*, 513 A.2d at 231, it is appropriate for us to discipline attorneys for dishonesty that would not result in criminal liability. In *Schneider*, we rejected a similar argument that an "affirmative wrongful intent" was necessary to trigger a disciplinary violation. 553 A.2d at 208. Although it is true that some evidence of a dishonest state of mind is necessary to prove an 8.4(c) violation, *see In re Stiller*, 725 A.2d 533, 538 (D.C.1999), that evidence

---

**8.** The *en banc* court in *Reback* accepted the original panel's findings as to violations, only reversing as to sanction. *See* 513 A.2d at 229.

need not rise to the level of an intent to defraud. As in *Schneider*, a deliberate falsification of documents is sufficient to support a finding of dishonesty, regardless of its motivation. 553 A.2d at 209. Substantial evidence supported the Board's determination that respondent's knowing submission of falsely signed documents was dishonest. Similarly, respondent had the requisite mens rea for a Rule 3.3(a) violation because he knowingly signed his client's names on the documents and he knowingly submitted those documents to the Probate Division.

Respondent contends that his failure to initial the signatures on the Category One and Category Two documents was attributable to "excusable neglect or inadvertence." He argues that the fact that most of the signatures are followed by his initials suggests that his failure to do so for the Category One and Two documents was an oversight. In the first place, respondent's contention that "almost all" of the signatures were followed by initials is not supported by the evidence. Because some of the documents required several signatures, respondent actually signed his clients' names without initialing seven times, a number that belies respondent's claims that these were isolated instances of inadvertence. Even if we were inclined to adopt respondent's characterization of the evidence, the Board rejected his claim of innocent oversight, and its finding is supported by substantial evidence.

■ Respondent also violated Rules 3.3(a) and 8.4(c) by submitting the documents (in Category Three as well as Category One) that he notarized after signing his clients' names. By notarizing the documents, respondent certified that he had properly verified the signatures by deter-

mining "that the person who appears before the officer and makes the verification is the person whose true signature is on the statement verified." D.C.Code §§ 42–142(b),–147 (c) (2001). The language of the probate forms reflects this requirement; for each document he notarized, respondent affirmed that the document had been "[s]ubscribed and sworn to before me." In fact, respondent's clients neither appeared before him nor signed the documents. By notarizing the documents, therefore, respondent made a false representation to the court that his clients had appeared before him and verified the documents.[9]

## V.

■ We also agree with the Board that respondent's submission of all four categories of documents to the Probate Division-including the documents in Category Four which he initialed and did not notarize-was conduct that seriously interfered with the administration of justice in violation of Rule 8.4(d). Rule 8.4(d) is "a general rule that is purposely broad to encompass derelictions of attorney conduct considered reprehensible to the practice of law." *In re Alexander*, 496 A.2d 244, 255 (D.C.1985). In order to violate the rule, an attorney's conduct must be "improper;" it must "bear directly upon the judicial process ... with respect to an identifiable case or tribunal"; and "the attorney's conduct must taint the judicial process in more than a *de minimis* way" *In re Hopkins*, 677 A.2d 55, 60–61 (D.C.1996).

In light of our previous analysis, there is no dispute that respondent's false signatures and his defective notarizations on the Category One, Two, and Three documents

---

**9.** We also note that this conduct violated D.C.Code § 1–1201(a) (2001), which prohibits an attorney from performing a notarial act in a matter in which the attorney is employed as counsel.

were improper. Respondent's submission of the Category Four documents was also improper, because it undermined the direct accountability of court-appointed fiduciaries that the verification requirement is meant to foster. Furthermore, the submission of all the documents bore upon the judicial process, as the documents were directly related to the court's supervision of the probate cases involved.

Respondent argues that his client's consent to his conduct meant that the false verifications did not prejudice the administration of justice. Indeed, Bar Counsel did not allege that Respondent's clients were prejudiced or that the court was misled into an erroneous decision by the false verifications. However, a Rule 8.4(d) violation does not require an interference with judicial decisionmaking "that causes the court to malfunction or make an incorrect decision." *Hopkins*, 677 A.2d at 60. All that Rule 8.4(d) requires is conduct that "taints" the process or *"potentially* impact[s] upon the process to a serious and adverse degree." *Id.* at 61 (emphasis added). Even if the false verifications did not actually affect the decisionmaking process, they did have the potential to do so. By signing and notarizing documents on his clients' behalf, Respondent effectively supplanted their role as fiduciaries for the estate.[10] Even though he may have had his clients' consent and even though Bar Counsel did not prove that respondent had damaged the interests of the estates, respondent's conduct impaired the court's ability to hold his clients responsible for any false or inaccurate statements in the documents. The conduct therefore had a sufficiently serious potential impact on the

administration of justice to constitute a violation of Rule 8.4(d). *See Reback*, 513 A.2d at 232 (finding that false signature on complaint "prejudiced the administration of justice itself, even though the[ ] dishonesty, as such, caused the client little, if any, prejudice").

## VI.

■ The Board recommended that respondent be suspended from the practice of law for thirty days. We will accept the Board's recommendation as to sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI § 9(g)(1). In considering the sanction, we bear in mind that the purpose of discipline is "not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct." *Reback*, 513 A.2d at 231. In light of these goals, we adopt the Board's recommendation and impose a thirty day suspension, as well as a requirement that respondent complete six hours of continuing legal education.

We have suspended attorneys for submitting false documents on several occasions. *See, e.g., In re Zeiger*, 692 A.2d 1351 (D.C.1997) (sixty day suspension for falsifying medical records); *In re Brown*, 672 A.2d 577, 579 (D.C.1996) *(per curiam )* (sixty day suspension for misrepresentations on three certificates of service); *see also In re Lopes*, 770 A.2d 561, 570 (D.C. 2001) ("Sanctions for dishonesty range generally from 30 days suspension to disbarment."). Respondent contends that his

---

**10.** In making this point, we note that respondent's clients apparently did not see many of the documents respondent signed on their behalf before the documents were filed. Although both respondent and his clients assert that respondent discussed the documents with his clients over the telephone, we do not believe that respondent's clients could effectively carry out their fiduciary obligations without personally reviewing the contents of the documents.

case is different from these cases because his misrepresentations were approved by his client and were not for personal profit. However, we have imposed suspension on attorneys whose misrepresentation was either for a client's benefit or with a client's approval. *See Zeiger,* 692 A.2d at 1353 (imposing sixty-day suspension for records alteration intended to benefit client); *In re Sandground,* 542 A.2d 1242, 1248 (imposing three-month suspension for assisting client to conceal assets in a divorce). We have also suspended attorneys whose misrepresentations were not intended to gain undue profit. *See In re McBride,* 642 A.2d 1270, 1273 (D.C.1994) (imposing one year suspension even though "acts were not motivated by a desire for personal gain"); *Schneider,* 553 A.2d at 212 (imposing thirty day suspension for falsifying travel expense reports where expenses were legitimate).

Respondent argues that he should be informally admonished, as was the attorney in *In re Confidential,* BDN 235–78 (BPR Nov. 29, 1979). That case involved an attorney who took signed affidavits from his client and other individuals and had the affidavits notarized outside of the presence of the affiants. The Board informally admonished the attorney, finding "a series of mitigating factors." *Id.* at 1. However, the Board expressed its intention "to deal more severely with similar violations" in the future. *Id.* at 5. The facts in respondent's case are more serious. While in *In re Confidential* the attorney obtained improper notarizations of properly signed documents, in this case respondent improperly signed (and in some cases notarized) documents over a two year period. In light of respondent's repeated submission of such documents, we cannot conclude that the recommended thirty day suspension is unwarranted. Additionally, we agree with the Board that respondent should be required to complete at least six hours of continuing legal education, with one course in ethics and the other course in probate administration or agency law.

Accordingly, it is hereby

ORDERED that respondent Vincent C. Uchendu is suspended for thirty days from the practice of law in the District of Columbia. This order of suspension shall be effective thirty days after entry. Respondent is further ordered to complete at least two continuing legal education courses (totaling six hours) in ethics and either probate administration or agency law within one year of the entry of this order and to provide written certification to the Board and to Bar Counsel that he has complied with this requirement.

*So ordered.*